

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH:RWN/SMS
F. #2025R00028

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 22, 2025

By ECF

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Lori Zeno
                Criminal Docket No. 25-182 (RPK)

Dear Judge Kovner:

      The government respectfully submits this letter to advise the Court of defendant Lori Zeno's new apparent crimes, which are violations of the conditions of her pretrial release, and to request that the Court modify her conditions of release in light of this new criminal conduct. See ECF No. 14 ("The defendant must not commit a federal, state or local crime while on release"). Specifically, the government has learned that while this case has been pending against Zeno for stealing money from the organization at which she worked (the "Organization"), Zeno has continued to try to steal money from the Organization.

      The defendant is a criminal defense lawyer and the former executive director of the Organization, a non-profit that provided legal services to indigent residents of Queens, New York. It is hard to imagine a defendant better positioned to know and understand her conditions of release. To assure the defendant's future compliance with her conditions of pretrial release, and to protect the safety of the community from the defendant's ongoing criminal conduct, the government requests that the defendant's bail conditions be revised to include standalone location monitoring, cyber monitoring of her activities on electronic devices, and a prohibition on the defendant contacting vendors about prior purchases that were purportedly made for the Organization.

      I.    The Defendant's Prior Theft of Funds from the Organization.

      As the Court is aware, the charges against Zeno stem from her misappropriation of funds from the Organization. One way in which Zeno and her co-defendant, Rashad Ruhani ("Ruhani"), stole from the Organization was by charging personal shopping and travel expenses to the Organization's corporate credit cards. They also stole from the Organization by hiring Ruhani's wife ("Wife-1") as the director of a non-existent "health and wellness" program for the Organization with a salary of approximately $60,000. As noted in the government's prior detention memorandum, not only did Wife-1 perform no substantive work for the Organization;

the investigation indicates that for her entire period of "employment," she was not even present in the United States.  See ECF No. 22 at ECF p. 13.

Among the expenses charged to the Organization, the investigation revealed that Zeno used an Organization credit card to pay for supplies from a shipping and warehouse supply company (the "Vendor") for Wife-1.  Specifically, on or about November 27, 2024, Wife-1 e-mailed a virtual shopping cart with over $12,000 worth of packing and shipping supplies from the Vendor's web site to Ruhani, which Ruhani then forwarded to Zeno.  On or about December 10, 2024, Zeno charged $11,860.71 to an Organization corporate credit card to purchase numerous items from this virtual shopping cart, including 24 plastic bins, industrial package scales, a vacuum sealer, and industrial packing tables (the "December Order").  Zeno then e-mailed Ruhani to confirm that the order had been placed.  The December Order was shipped to a warehouse operated by the Organization in Inwood, New York.  In addition, on or about September 7, 2024, Zeno charged $2,642.72 to an Organization credit card to purchase six units of industrial steel shelving and twelve knives from the Vendor (the "September Order"), which was shipped to the same warehouse.  The government is not aware of the purpose of the September and December Orders.

II.     Zeno's Recent Attempt to Steal Funds from the Organization.

The government has learned that Zeno recently tried to steal funds from the Organization by seeking a refund to her personally from the Vendor for the September and December Orders.  Specifically, on or about August 5, 2025, Zeno contacted the Vendor and asked to return items from the December Order.  According to the Vendor's notes from the call, Zeno stated that the reason for the return was that the "[j]ob fell through and [the] items [were] no longer needed."  Per the notes, Zeno stated that the customer was a "non profit and cannot use the items," which begs the question of the actual purpose of the Orders.

On or about August 7, 2025, a driver for the Vendor traveled to Zeno's home and picked up over $7,000 worth of merchandise from the December Order from a shed at Zeno's residence.  In addition, Zeno attempted to return certain merchandise from the September Order, which the Vendor subsequently refused to accept.

On or about August 8, 2025, Zeno asked the Vendor to make the refund check of over $7,000 payable to her personally and mail it to her personal residence, not to the Organization, purportedly because the Organization was out of business.[1]  Zeno contacted the Vendor again on or about August 25, 2025, and again asked that the refund check be made payable to her.  Zeno was told, in substance, that the refund check would be made payable to the Organization because that was the entity that was billed for the December Order.  Zeno then

---

[1]     In or around March 2025, the Organization lost its contract with New York City providing indigent legal services and another organization was selected to take over its contract beginning in July 2025.  Nothing about this transfer of responsibilities would give the defendant the right to the Organization's refund from the Vendor.

2

asked to speak to a manager and threatened to take legal action against the Vendor. The Vendor ultimately issued a refund check to the Organization.

Regardless of the original purpose of the September and December Orders, it is clear that both orders were paid for with Organization funds and that, after she was terminated from the Organization and indicted for stealing from it, Zeno tried to convince the Vendor to divert a refund check that was owed to the Organization to herself. In other words, Zeno has again attempted to steal from the Organization.

### III. The Defendant's Misrepresentations to Pretrial Services

Not only did Zeno try to steal money meant for the Organization, she also lied to her assigned Pretrial Services Officer about her communications with the Vendor. Zeno told her Pretrial Services Officer that she had been contacted by someone from a job readiness program that she had planned to open while working for the Organization, who informed Zeno that certain items needed to be removed from a location in Far Rockaway. Zeno claimed that she stored the merchandise in a storage unit for a period of time, then contacted the Vendor to return it because she did not want to continue paying for the storage unit. According to Zeno, the Vendor offered to refund the credit card but, because the credit card had been cancelled, Zeno asked the Vendor to make the refund check out to her. Zeno represented to her Pretrial Services Officer that she intended to send the money to the Organization, and when the Vendor told her that they would send the check directly to the Organization, she said that was okay.

This account was false in at least two respects. First, Zeno told her Pretrial Services Officer that she had returned the merchandise because she did not want to continue paying for a storage unit to house it; in fact, Zeno was storing the merchandise in a shed at her residence. Second, Zeno falsely claimed that she asked for the refund check so she could send the money to the Organization. In fact, as reflected in the Vendor's notes, Zeno repeatedly insisted that the refund check *not* be paid to the Organization. Zeno was so persistent in this demand that the Vendor ultimately blocked her phone number.

These lies to Pretrial Services further demonstrate that Zeno cannot be trusted to follow her conditions of release and requires strict monitoring to ensure her compliance.

### IV. The Defendant Should Be Subject to Monitoring of Her Location and Electronic Devices and Be Prohibited from Contacting Vendors

Under Title 18, United States Code, Section 3142(c)(3), the court may "at any time amend" the order of release on bail conditions and "impose additional or different conditions of release." Zeno's conduct demonstrates that she cannot be trusted to comply with the current conditions of release. Her attempt to obtain personally a refund for purchases that were billed to the Organization is a troubling continuation of the pattern of fraud described in the indictment. Put simply, in attempting to steal an additional $7,000 from the Organization, Zeno again victimized the Organization.

In order to assure the defendant's compliance with her conditions of release and the safety of the community, the government requests that the Court amend the defendant's conditions of pretrial release to include the following:

3

1. Zeno be placed on standalone electronic monitoring;

2. Zeno may not contact any vendor about any purchase made on behalf of the Organization; and

3. Zeno be subject to cyber monitoring of her electronic devices to ensure compliance with the conditions of pretrial release.

Although the government believes that Zeno's criminal conduct warrants the revocation of her bond, the government is not seeking revocation at this time. Rather, it is the government's view that the proposed revised conditions may be sufficiently restrictive to both assure the defendant's appearance and the safety of the community. However, should the defendant continue in her flagrant violations of her conditions of release, the government may reevaluate its position.

The government has conferred with the defendant's Pretrial Services Officer, who joins in the government's request for modifications (1) and (2) above. Pretrial Services opposes modification (3).

The government will be prepared to discuss these and any other additional conditions that may be necessary to ensure Zeno's compliance with the terms of her pretrial release at the upcoming status conference, scheduled for October 20, 2025.

    Respectfully submitted,

    JOSEPH NOCELLA, JR.
    United States Attorney

By:    /s/ Russell Noble
    Russell Noble
    Sean M. Sherman
    Assistant U.S. Attorneys
    (718) 254-6178/6262

cc:    Clerk of Court (by ECF)
    Counsel of Record (by ECF)