Case 1:25-cr-00182-RPK     Document 31     Filed 12/15/25     Page 1 of 14 PageID #: 132

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\* DECEMBER 15, 2025 \*
BROOKLYN OFFICE

RCH:RWN/SMS
F. #2025R00028

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | S U P E R S E D I N G<br>I N D I C T M E N T |
| - against - | |
| | Cr. No. 25-182 (S-1) (RPK) |
| LORI ZENO,<br>RASHAD RUHANI and<br>KIMBERLY OSORIO, | (T. 18, U.S.C., § 666(a)(1)(A),<br>981(a)(1)(C), 982(a)(1), 982(b)(1),<br>1001(a)(2), 1343, 1349, 1512(c)(2),<br>1519, 1956(h), 2 and 3551 et seq.; |
| Defendants. | T. 21, U.S.C., § 853(p); T. 28, U.S.C.,<br>§ 2461(c)) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

At all times relevant to this Superseding Indictment, unless otherwise indicated:

INTRODUCTION

I.      The Defendants and Relevant Entities

1.      The Organization, an entity the identity of which is known to the Grand Jury, was a non-profit organization founded in approximately 1996 that provided legal services and community support services in Queens, New York.  The Organization received funding from several sources, including the federal government and New York City.  For example, in or around June 2024, the Organization received approximately $368,000 of federal funds from the New York City Department of Housing Preservation and Development, pursuant to a contract funded by the United States Department of Housing and Urban Development.

2.      The defendant LORI ZENO was a founder of the Organization and served as its Executive Director from approximately 2018 until January 2025.

3. The defendant RASHAD RUHANI was an employee of the Organization. RUHANI was hired in or about October 2023 as a client advocate and, in that role, reported to the defendant LORI ZENO. After RUHANI began working at the Organization, RUHANI and ZENO began a romantic relationship. In or about June 2024, ZENO promoted RUHANI to a position managing the Organization's youth program.

4. The defendant KIMBERLY OSORIO was an associate of the defendant RASHAD RUHANI.

II. The Fraudulent Scheme

5. In or about and between June 2024 and January 2025, the defendants LORI ZENO and RASHAD RUHANI corruptly diverted hundreds of thousands of dollars from the Organization to personally enrich themselves and others. The defendants used Organization funds to pay for personal expenses, including but not limited to expensive meals, luxury shopping, foreign travel and rent for a penthouse apartment (the "Penthouse Apartment").

6. As part of the scheme, the defendants LORI ZENO and RASHAD RUHANI used the Organization's corporate credit cards to pay for personal vacations. For example, in or about September 2024, ZENO and RUHANI used the Organization's corporate credit cards for over $10,000 worth of expenses associated with a personal vacation they took together to Bali. In or about December 2024, ZENO used the Organization's corporate credit card for over $1,700 in expenses at a luxury resort in Santa Monica, California.

7. The defendants LORI ZENO and RASHAD RUHANI also used the Organization's corporate credit cards for expensive meals and luxury items. For example, Organization corporate credit cards issued to ZENO were used to make purchases of over $1,300 at a high-end restaurant in or about July 2024, over $5,200 at a luxury goods store in or about

August 2024, and over $1,300 at a clothing store in or about August 2024.  An Organization corporate credit card issued to RUHANI was used to make purchases of over $1,100 at another luxury goods store in or about October 2024 and over $2,600 at a high-end steakhouse in or about November 2024.  In one instance, in or about July 2024, RUHANI used an Organization corporate credit card issued to ZENO to pay over $3,300 for an 85-inch smart television and related accessories to be shipped to and installed at the Penthouse Apartment.  Also, in or about July 2024, approximately $600 was charged to an Organization corporate credit card issued to ZENO to pay for teeth whitening procedures for ZENO and RUHANI.

8. The defendants LORI ZENO and RASHAD RUHANI also made numerous false statements to the Organization, in which they falsely described personal expenses as business expenses, to conceal their crimes and to obtain reimbursement payments from the Organization by fraud.  For example, in or about July 2024, ZENO signed a lease on the Penthouse Apartment at a rate of more than $6,000 per month.  RUHANI was listed as an occupant on the lease for the Penthouse Apartment and signed documents connected to the lease.  Thereafter, ZENO paid the rent for the Penthouse Apartment.  Between approximately August 1, 2024, and October 25, 2024, RUHANI submitted at least four fraudulent requests for the Organization to "reimburse" him approximately $39,000 which he claimed to have expended on rent and utilities for the Penthouse Apartment.  In the fraudulent request forms, RUHANI claimed that the Penthouse apartment was being used for "client defense" and "foster parent care" and did not disclose to the Organization that ZENO and RUHANI were, in fact, each using the Penthouse Apartment.  Moreover, the fraudulent reimbursement request forms submitted by RUHANI included a photographic excerpt of the lease agreement for the Penthouse Apartment that had been altered to remove ZENO from the list of occupants.  Based on the fraudulent

request, the Organization transferred approximately $39,000 to RUHANI for the Penthouse Apartment.

9. To conceal and promote their scheme, the defendant RASHAD RUHANI funneled the Organization's "reimbursements" for the Penthouse Apartment to the defendant LORI ZENO, who then used the Organization's "reimbursement" funds to pay the rent for the Penthouse Apartment. For example, on or about October 25, 2024, RUHANI submitted a "reimbursement" request for approximately $12,417 for "October/November/Utilities" for the Penthouse Apartment. On or about the same day, the Organization "reimbursed" RUHANI approximately $12,417. Between October 31, 2024, and November 4, 2024, RUHANI electronically transferred a total of $12,500 to ZENO in daily payments of $2,500. Thereafter, between November 6, 2024, and November 13, 2024, ZENO paid approximately $16,312 in rent for the Penthouse Apartment.

10. Similarly, between July 2024 and November 2024, the defendants LORI ZENO and RASHAD RUHANI charged at least $2,000 to the Organization's corporate credit cards for parking near the Penthouse Apartment. ZENO and RUHANI caused expense reports to be submitted to the Organization via the Internet falsely claiming that expenses for parking near the Penthouse Apartment were business expenses.

11. In total, the defendants RASHAD RUHANI and LORI ZENO misappropriated at least $300,000 in Organization funds for their own personal benefit.

III. <u>Obstruction of Justice and False Statements to Law Enforcement Agents</u>

12. On or about June 2, 2025, a grand jury sitting in the Eastern District of New York returned the initial indictment in this case against the defendants RASHAD RUHANI and LORI ZENO. That same day, a United States Magistrate Judge for the Eastern District of

New York approved warrants (the "Warrants") authorizing federal agents to search the defendant RASHAD RUHANI, as well as other named subjects of the investigation (the "Subjects"), and seize electronic devices in their possession, custody, or control as evidence and instrumentalities of the offenses described in the initial indictment. The Warrants also authorized the seizure of "[i]nformation relating to attempts to alter, destroy, mutilate, or conceal a record, document, or other object, including by destroying or altering physical records" as evidence of those offenses.

13. On or about June 10, 2025, the defendants RASHAD RUHANI and KIMBERLY OSORIO traveled together on a flight from Los Angeles to John F. Kennedy International Airport ("JFK") in the Eastern District of New York. Immediately prior to the flight's departure, RUHANI was in possession of at least one cellular telephone. While on the flight to JFK, RUHANI and OSORIO learned that law enforcement had conducted the search of one or more of the Subjects pursuant to the Warrants. RUHANI and OSORIO thereafter took steps to conceal one or more of RUHANI's electronic devices from law enforcement by providing them to OSORIO. When their flight landed at JFK, law enforcement agents executed the warrant to search RUHANI but recovered no electronic devices within his possession, custody, or control.

14. As the defendant KIMBERLY OSORIO attempted to exit JFK, she was stopped by a special agent of the Federal Bureau of Investigation ("FBI"), who identified himself to her and advised her that lying to a federal agent is a crime. OSORIO agreed to voluntarily speak with the FBI special agent. During questioning, OSORIO falsely stated that she was not traveling with anyone else and that she did not have any devices on her person that did not belong to her. In fact and in truth, OSORIO had flown into JFK with the defendant RASHAD

RUHANI and was in possession of one or more of his devices.  After lying to the FBI special agent, OSORIO exited JFK with one or more of RUHANI's electronic devices.

15.     On or about the following day, June 11, 2025, at the United States District Court for the Eastern District of New York, the defendant KIMBERLY OSORIO engaged in a voluntary interview with law enforcement, including another FBI special agent.  During that interview, OSORIO admitted that she had traveled from Los Angeles to New York with the defendant RASHAD RUHANI the prior evening.  OSORIO falsely claimed that she did not take possession of any of his property, did not take possession of his cellular telephone, and did not know what happened to his cellular telephone.  OSORIO also falsely stated that she believed RUHANI had lost his cellular telephone.

16.     Following the voluntary interview on or about June 11, 2025, the defendant KIMBERLY OSORIO was served with a grand jury subpoena to produce any electronic devices in her possession, custody, or control belonging to the defendant RASHAD RUHANI.  OSORIO did not produce any responsive materials to the grand jury.

17.     On or about June 12, 2025, the defendant KIMBERLY OSORIO engaged in a recorded telephone call with the defendant RASHAD RUHANI, who was incarcerated at the Metropolitan Detention Center.  During the call, RUHANI asked, in sum and substance, for OSORIO to contact another individual on RUHANI's behalf.  RUHANI told OSORIO to "go to the phone that you have" to look up the phone number for that individual, referring to RUHANI's device that RUHANI had provided to OSORIO.  During another telephone call later that same day, OSORIO told RUHANI that she had been able to speak to that individual.

## COUNT ONE
(Wire Fraud Conspiracy)

18.     The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

19.     In or about and between June 2024 and January 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LORI ZENO and RASHAD RUHANI, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Organization, and to obtain money and property from the Organization by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce one or more writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO THROUGH FOUR
(Wire Fraud)

20.     The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

21.     In or about and between June 2024 and January 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LORI ZENO and RASHAD RUHANI, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Organization, and to obtain money and

property from it by means of one or more materially false and fraudulent pretenses, representations and promises.

22. On or about the dates set forth below, for the purpose of executing such scheme and artifice, and attempting to do so, the defendants LORI ZENO and RASHAD RUHANI, together with others, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, and pictures and sounds, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| TWO | July 1, 2024 | RUHANI fraudulently charged $3,320.59 to an Organization corporate credit card at an electronics store in Westbury, New York, for an 85-inch smart television and related accessories to be shipped to and installed at the Penthouse Apartment. |
| THREE | September 2, 2024 | ZENO fraudulently redeemed $3,685.71 in rewards points from an Organization corporate credit card for her stay with RUHANI at a hotel in Bali. |
| FOUR | November 4, 2024 | RUHANI electronically transferred approximately $2,500 from a bank account opened in Queens, New York ending in 0807, to ZENO. |

(Title 18, United States Code, Sections 1343 and 3551 et seq.)

COUNT FIVE
(Theft of Funds)

23. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

24. In or about and between June 2024 and January 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LORI ZENO and RASHAD RUHANI, being agents of the Organization, did knowingly and intentionally embezzle, steal, obtain by fraud, misapply and otherwise without

authority convert to the use of a person other than the rightful owner property of the Organization, which received, in one or more one year periods, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance, which property was valued at $5,000 or more, and was owned by, and was under the care, custody and control of, the Organization, to wit: United States currency.

(Title 18, United States Code, Sections 666(a)(1)(A), 2 and 3551 et seq.)

## COUNT SIX
(Money Laundering Conspiracy)

25. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

26. In or about and between June 2024 and January 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LORI ZENO and RASHAD RUHANI, together with others, did knowingly and intentionally conspire to conduct and attempt to conduct one or more financial transactions, to wit: transactions in and affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions involved the proceeds of one or more specified unlawful activity, to wit: (i) theft of funds, in violation of Title 18, United States Code, Section 666(a)(1)(A); and (ii) wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the

nature, location, source, ownership and control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT SEVEN
(Concealment of Evidence)

27. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

28. On or about and between June 10, 2025 and June 16, 2025, within the Eastern District of New York and elsewhere, the defendants RASHAD RUHANI and KIMBERLY OSORIO, together with others, did knowingly and intentionally alter, destroy, mutilate, conceal and cover up a record, document and tangible object, to wit: one or more electronic devices, with the intent to impede, obstruct and influence the investigation and proper administration of, and in relation to and contemplation of, a matter within the jurisdiction of a department and agency of the United States, to wit: an investigation by the United States Department of Justice.

(Title 18, United States Code, Sections 1519, 2 and 3551 et seq.)

## COUNT EIGHT
(Obstruction of Justice)

29. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

30. On or about and between June 10, 2025 and June 16, 2025, within the Eastern District of New York and elsewhere, the defendants RASHAD RUHANI and KIMBERLY OSORIO, together with others, did knowingly, intentionally and corruptly obstruct,

influence and impede, and attempt to obstruct, influence and impede, an official proceeding, to wit: a federal grand jury investigation and criminal trial in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## COUNT NINE
(False Statements)

31. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

32. On or about June 10, 2025, within the Eastern District of New York and elsewhere, the defendant KIMBERLY OSORIO did knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the FBI, in that OSORIO falsely stated and represented to FBI special agents that she (a) had traveled alone from California to New York on or about June 10, 2025, and (b) did not have on her person any electronic devices belonging to any other individuals, when in fact, as OSORIO then and there well knew and believed, she had traveled with RUHANI from California to New York on or about June 10, 2025, and had in her possession one or more electronic devices belonging to RUHANI.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## COUNT TEN
(False Statements)

33. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

34. On or about June 11, 2025, within the Eastern District of New York and elsewhere, the defendant KIMBERLY OSORIO did knowingly and willfully make one or more

materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the FBI, in that OSORIO falsely stated and represented to FBI special agents that on June 10, 2025, when she traveled to JFK with RUHANI, she (a) did not take possession of RUHANI's property, (b) did not take possession of RUHANI's cellular telephone, and (c) did not know what happened to RUHANI's cellular telephone, when in fact, as OSORIO then and there well knew and believed, on June 10, 2025, she did take possession of one or more electronic devices belonging to RUHANI, including a cellular telephone.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE THROUGH FIVE AND EIGHT

35.   The United States hereby gives notice to the defendants charged in Counts One through Five and Eight that, upon their conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

36.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)   cannot be located upon the exercise of due diligence;

    (b)   has been transferred or sold to, or deposited with, a third party;

    (c)   has been placed beyond the jurisdiction of the court;

    (d)   has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

    (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT SIX

    37. The United States hereby gives notice to the defendants charged in Count Six that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

    38. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/s/

_____
FOREPERSON

*By David Pitluck, Assistant U.S. Attorney*
_____
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK