UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

       - against -                     Docket No. 25-Cr-182 (RPK)

LORI ZENO,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# DEFENSE SENTENCING RECOMMENDATION
*(For a Sentence at Variance with the Guidelines)*

*Attorney for Lori Zeno*

*Anthony L. Ricco*
ANTHONY L. RICCO, ESQ.
20 Vesey Street, Suite 400
New York, New York 10007
(212) 791-3919
*Tonyricco@aol.com*

Steven Z. Legon, Esq.
Of Counsel & On the Memorandum

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

      - against -                          Docket No. 25-Cr-182 (RPK)

LORI ZENO,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

This Sentencing Recommendation is submitted pursuant to Rule 32 (f)(1) and (2) of the Federal Rules of Criminal Procedure, which sets forth Lori Zeno's objections to the Presentence Investigation Report and her Sentencing Recommendation. Lori Zeno requests that the court consider the imposition of a non-custodial sentence at variance with the Guidelines pursuant to 18 U.S.C.§ 3553(a) and *United States v. Booker*, 534 U.S. 220 (2005).

## I.  Preliminary Note and Summary of Arguments Supporting The Sentence Requested

In this case, although the Presentence Investigation Report (PSR) adopted the guideline range of 51 to 68 months set forth in the plea agreement, but recommended an 18 month sentence at variance with the guidelines. The recommendation for a sentence at variance with the guidelines was based upon a confluence of powerful mitigating circumstances present throughout the formative, teen and adult years of the life journey of Lori Zeno, and the circumstances of the offense. The PSR thoughtfully and carefully memorializes a lifetime of traumatic exposures that include, *inter alia*, enduring physical abuse in the home as a child; ███████████████████████████████████████████████; raising children as a single parent as a result of a failed abusive marriage; the emergence of sustained alcoholism over the ensuing decades as a coping mechanism; and enduring decades of long term

debilitating physical health and devastating mental heath issues.[1]  In addition, the PSR notes the difficulties endured by Lori Zeno in raising a son, Zachary, with ████████████████ (PSR ¶ 59, page 13), a son who was completely abandoned by Mark Zeno, her ex-husband and their son's father (PSR ¶ 61, page 14), who "had nothing to do with" and played no role assisting with raising Zachary, although, as noted in the PSR, he maintained a long term, positive relationship with his daughter Zoe, whom he doted on.  (PSR ¶ 59, page 14) There is also great concern that an extended period of incarceration would have a devastating impact upon her son's emotional stability (PSR ¶ 61, page 14) and a fear that he may need to be placed in an "assisted living environment" (PSR ¶ 59, pages 13-14) to address his overall needs for care as an adult with ████████████████████.[2]

What is learned from Lori Zeno's life history, is that although she possessed a strong will to achieve, and later to provide for her family as a heartbroken single mom suffering from depression, her life trajectory was influenced by a confluence of unresolved traumatic experiences that converged critically around the time of her meeting Rashad Ruhani.  The confluence of the traumatic experiences helps to explain why and how such a successful lawyer abandoned her professional standards and ethics

---

[1]    In the experience of defense counsel, the PSR in this case is unique in its thorough and in depth memorialization of the tragic events that Lori Zeno endured over the course of her entire lifetime up to and including the time period of her pretrial release in this case.  Normally, counsel's sentencing submissions provide an in-depth chronology of a social history that includes, as in Lori Zeno's life, a chronology of long term mental health exposure and treatments, which in this case includes several ████████████████ (PSR ¶¶ 68-73, pages 16-17); a history of hospitalizations for excruciating pain producing debilitating physical impairment known as "████ ████████████████ in 2015 (PSR ¶ 64, page 15); extensive cardiac history involving medical and interventional treatments (████████████████████████)((PSR ¶ 67, page 15); compounded by ████ and ████████ (PSR ¶ 67, page 15).  Here, as a result of the thoroughness of the PSR, there is no need to repeat the details of this extensive history as the court can refer directly to the PSR for detailed clarity.  Additionally, as a result of Lori Zeno's extensive history of both mental health treatments and chronic medical infirmities, defense counsel provided Probation with extensive volumes of Lori Zeno's medical and mental health records, which corroborate and memorialize the trauma that she has endured, and which have been accurately and appropriately incorporated in the PSR.  A copy of Lori Zeno's extensive medical and mental records are available for review by the court.

[2]    ████████████████████████████████████████████████████  The term ████████ describes the wide varaince in strengths and challenges across those who are afflicted.  Although having intellectual capacity, some require substantial daily support, while others live independently.  Zachary Zeno has been a high achiever, academically, however, he suffers from ████████████ in addressing fundamental issues in relation to engaging in or maintaining ████████ ████████████.

2

and willfully engaged in destructive criminal behavior that served to sabotage an admirable life time of professional achievement of genuinely providing legal services to the poor people of the impoverished neighborhoods of Southeast Queens.

Meeting With Rahsad Ruhani The Downward Spiral

At the time Lori Zeno met Rahsad Ruhani in late 2023, she was a 64 year old highly accomplished and well respected criminal defense attorney who worked for many years with the Legal Aid Society before co-founding the Queens Defenders and serving as its Executive Director since 2018. PSR, ¶ 8, page 3.

Rahsad Ruhani, ten years Lori Zeno's junior, had recently been released in 2022 to Parole Supervision from a 1996 incarceration with a sentence of 25 years to Life in the New York State Penitentiary for a violent robbery.[3]

It was through Lori Zeno's commitment to the providing community services to the poor people in Southeast Queens that she came into contact with Rashad Ruhani in the first place. As part of the mandate of the Queens Defender to provide community outreach and youth education and empowerment. It is ironic that it was a New York State Supreme Court Judge, the Honorable Bruna DiBiase, who then presided over the Queens Supreme Court Criminal Term's Youth Part, who introduced Rashad Ruhani to Lori Zeno. Throughout 2023, Rashad Ruhani, a formerly incarcerated state felony offender, often appeared in the Youth Part as a liaison and mentor to young offenders as an independent consultant. As a result of the Queens Defenders' commitment and its outstanding advocacy on behalf of young offenders, Judge DiBiase thought that Rashad Ruhani would be a great fit for the Queens Defenders, and recommended Rashad Ruhani to Lori Zeno for full time employment as a Youth Advocate with the Queens Defenders.

---

[3] The defense investigation revealed that Rashad Ruhani had a serious violent felony criminal history. In 1996, Rashad Ruhani was convicted for robbery, and was sentenced as a persistent violent felony offender to a term of imprisonment for 25 years to life. Rashad Ruhani was released to lifetime parole supervision in July 2022.

Lori Zeno had previously created a program at Queens Defenders that hired ex-offenders to interface with young offenders and the community, with goal of building bridges and destroying the cycle of the poverty to prison narrative prevalent in our inner city communities. Rashad Ruhani, who had served decades in prison, but who was recommended by a highly respected state Supreme Court Judge who had witnessed his advocacy, seemed a perfect addition to the Queens Defenders staff. As a result, Rashad Ruhani was interviewed by Lori Zeno and hired for a Client Advocate position at Queens Defenders at a yearly salary of $60,000.00. However, it quickly became clear that Rashad Ruhani had his own personal agenda, that went way beyond being a advocate for teenaged offenders.

Rashad Ruhani is a handsome, well built man who showered Lori Zeno with attention, as he studied her weaknesses, which she confessed to him included years of loneliness and an unfulfilled and broken emotional spirit. Within months of his initial employment, Rashad Ruhani convinced Lori Zeno to promote him to a position of Director of the Youth Program, which earned him a yearly salary of $160,00.00. Within that same time period, Rashad Ruhani also persuaded Lori Zeno into hiring several of his friends and family members who had "low show" or "no show" jobs at Queen Defenders. Rashad Ruhani was given a Queens Defenders' credit card, and within months he charged up to $76,000 dollars for items that had zero to do with the goals of the Queens Defenders. PSR, ¶ 17, page 5.

Within months Rashad Ruhani was in full emotional pursuit of Lori Zeno, convincing her to marry him in religious ceremony, and thereby also giving him full access to her personal finances and lines of credit.[4] Again, these circumstances are not brought to attention of the court to avoid or deflect Lori Zeno's criminal responsibility for criminal conduct that she willingly engaged, but rather for the court to have insight into her state of mind, the relative culpability of the participants in the criminal

---

[4]    Every single family member, including Lori Zeno's own children, and every single friend was vehemently opposed to and cautioned Lori Zeno's against her plan of marriage to Rashad Ruhani. However, Lori Zeno, a headstrong lawyer, was in complete rapture with the new found attention and emotional fulfillment she was receiving from the handsome younger Rahsad Ruhani. Soon after the marriage, Lori Zeno came to confront an ugly reality, as she became the subject of Rahsad Ruhani's insatiable demands for large sums of money, and his blatant infidelities with multiple women. Humiliated and horrified by her decision, and her failure to heed the advice of her close friends and family, sent Lori Zeno ████████████████████████████████████ ██████████████ .

conduct and her potential to rehabilitation and redemption.

Lori Zeno pled guilty to diverting over $500,000 of money from the Queens Defenders into purchases that had nothing to do with the legitimate business of Queens Defenders, but instead were diverted to satisfy the thirsts of Rahsad Ruhani, and the emotional desires (albeit damaged) of Lori Zeno. At the time Lori Zeno met Rashad Ruhani in late 2023, she was a financially stable, accomplished lawyer and executive, who owned her family home in Garden City, New York, and has raised her children without the theft of funds, but rather from flat out hard work, sacrifices and perseverance of the will to be an outstanding lawyer and mom to her two children.

Within months of Rashad Ruhani's employment, however, Queens Defenders funds were being diverted to pay for expenses and for luxury items that had never before been indulged in by Lori Zeno during her 38 year career at the Bar before she met Rashad Ruhani. Queens Defenders funds were spent on maintaining Rashad Ruhani's Mercedes Benz; to purchase expensive luxury clothing, including leasing penthouse apartment in Astoria, that Rashad Ruhani used for his female love interests, a penthouse apartment that was also well furnished and attired with Queens Defender funds.[5]

Lori Zeno was devastated by her own criminal conduct and how she destroyed, over a course of months, what took her decades of hard work and commitment to providing services to the poor and indigent, to accomplish. Lori Zeno's lifetime of commitment was manipulated, exploited, derailed and destroyed. Lori Zeno lost her will, and lost her way in life. Lori Zeno was a middle aged woman who not only threw away her life's work and legacy, but she put in jeopardy the financial stability of Queens Defenders, the hundreds of employees who fed their families through their legitimate employment and ability to provide necessary legal services to an indigent community.

---

[5] Although Rashad Ruhani professes a self serving morality in his relationship with women in his sentencing submission, there is an audio recording of Rashad Ruhani manipulating a young female employee of Queens Defenders in a sex in exchange for a promotion scheme, and that the rendezvous for the sex will take place at the Astoria penthouse apartment furnished with Queens Defenders funds. In this recording, the court will also have an opportunity to hear the manner in which Rashad Ruhani manipulates and uses women to satisfy his sexual interests. Link to audio capturing Rashad Ruhani: https://drive.google.com/file/d/1XHlZA_sBGhHbmOahAv6tMrxnfybwMn9y/view?usp=sharing In addition to operating his own Mercedes Benz, one week after their sham marriage, Rashad Ruhani convinced Lori Zeno to purchase him a fully loaded brand new 2024 BMW M-6 automobile costing approximately $96,000.00.

In fact, the mental health records corroborate that ███████████████████ ███████, Lori Zeno stated that the destruction she did by placing at risk the employment of over 200 workers at the Queens Defenders was a factor in triggering her second attempt to end her life. Lori Zeno was unable to face the fact that she knowingly and willfully participated in the destruction of a beautiful Defenders program of which she was a co-founder and later served as its Executive Director. This realization led to ███████████ that preceded her arrest in this case, as Lori Zeno lost hope, and her fundamental faith in herself, along with her will to persevere.

Lori Zeno did not need a $96,000.00 BMW, or to make repairs to maintain Rashad Ruhani's Mercedes Benz. Lori Zeno proudly owned and still drives a ten year old 2016 Toyota RAV4. See, PSR ¶ 88, page 20. Lori Zeno did not need, nor was rarely present at the penthouse apartment in Astoria. Lori Zeno lived in a beautiful, but modestly furnished home at 5 First Street in Garden City, Long Island, where she resided along with her children since 1993. See, PSR ¶ 62, page 14. Lori Zeno had a substantial income prior to meeting Rahsad Ruhani that was earing an average salary of $400,000 per year. See, PSR, ¶ 84, page 19. Lori Zeno did not ever take overseas vacations during her career as a lawyer, although she had ample income to do so. The only vacations that Lori Zeno took prior to meeting Rashad Ruhani, were a cruise with her daughter in 2016 to Bermuda just before her daughter's marriage; a country music festival in Myrtle Beach, South Carolina again with her daughter prior to her 2016 marriage, and prior to that, summer vacation trips involving her children to her brother's lake side house in New Hampshire. As said above, Lori Zeno never took any vacations outside of the United States nor purchased high end luxury designer clothing. Lori Zeno does not own expensive jewelry or fancy clothing. Her earned income went to provide a home for her children as a single parent, and to provide them with educational opportunities. Finally, as stated above, all of the individuals with "low show" or "no show" jobs were the friends, family of Rahsad Ruhani (the wife of Rahsad Ruhani named Nora Washington; his daughter Tijana Reyes, and at least one other individual related to Rahsad Ruhani's past romantic relationship). That these funds were diverted in such a way is insightful about

the relative culpability of the defendants.  Finally, it should noted that Lori Zeno shall bear the burden, alone, of the payment of the substantial restitution, as Rashad Ruhani, serving lifetime parole, is penniless.  The entire amount of restitution will become the sole responsibility of Lori Zeno.

The defense has requested a non-custodial sentence at variance with the guidelines.  In this case, Lori Zeno entered a guilty plea pursuant to a plea agreement which contained an advisory sentencing range that, as adopted in the Presentence Investigation Report, is based upon a total offense level of 24 and a criminal history category of I, the guideline imprisonment range is 51 months to 63 months.  See, PSR, ¶ 98, page 23.  As recognized in the plea agreement, it is significant that Lori Zeno's sentence, however, is not subject to a mandatory minimum term of imprisonment.  See, 18 U.S.C. § 1349 and 18 U.S.C. § 1343.   See, PSR, ¶ 97, page 23.   The court has the authority to impose a non-custodial sentence.

In connection with imposing a just sentence, Congress has mandated that the court impose a sentence upon a defendant that *is sufficient but not greater than necessary* to reach a broad array of specifically legislated aspirational goals.  However, as stated above and as set forth below, there are significant mitigating factors present in Lori Zeno' life narrative to suggest that a custodial sentence, even at 18 months as suggested by Probation, is "*greater*" than necessary to reach the sentencing objectives of Congress and to punish and hold Lori Zeno accountable for her descent into into criminal conduct.

The protection of the public from future criminal conduct of an offender is a critically important, legislatively mandated factor for consideration at the time of sentence.  See, 18 USC §3553(a)(2)(C)(*to protect the public from further crimes of the defendant*).  As stated above, the statutory sentencing range for the crime to which Lori Zeno pled guilty has no mandatory minimum term of imprisonment. See, 18 U.S.C. § 1349 and 18 U.S.C. § 1343.  Therefore, the sentence requested by Lori Zeno does not offend the sentencing goals of Congress and cannot *aliunde* be said not to protect the public from future criminal conduct of Lori Zeno, who at age 66, has lost her license to practice law.

The logical reason for permitting this huge disparity between the agreed applicable *advisory*

guidelines range and the sentence requested is the unique convergence of negative risk factors that individual to Lori Zeno along with the srious mental health challenges, including several █████████ █████. When coupled with the unique facts of the recipient of the overwhelming majority of the public funds diverted in this case, a non-custodial sentence does not offend the goals of the Sentencing Commission's *advisory* Guidelines.   There is no question that (1) the pervasive negative risk factors which influenced Lori Zeno' formative and teenaged years exposed her to trauma which contributed to a broken mind set that was a gateway to her susceptibility to the criminal conduct charged in this case; (2) the mental health treatment and progress that Lori Zeno has made since her arrest on June 18, 2025; (3) the hardship that her █████ son shall endure should the court impose a custodial sentence; and (4) the fact that Lori Zeno shall, in fact, be the only individual who shall be required to pay the substantial restitution in this case, *inter alia*, are not factors accounted for or calculated in arriving at the elevated guideline calculation of 51 to 63 months or the 18 months at variance recommended by Probation.

As a result, it is not unreasonable nor inconsistent with the sentencing goals of Congress to permit a non-custodial sentence - - especially since Congress mandates the consideration of the factors not included in arriving at the *advisory* Guideline range or the recommended sentence at variance from the Guidelines.[6]

There is no question that must consider the chronology of conduct that comprises the criminal offenses charged.   There were, however, equally compelling negative risk factors present in the life of Lori Zeno then, and positive steps taken towards her redemption and other positive factors during her pretrial release, which provide a basis for the imposition of a sentence at variance with the guidelines.[7]

---

[6]    These are highly critical factors that Congress mandated must be considered in arriving at a sufficient but not greater than necessary sentence to impose.  See, 18 USC §3553(a)(1).  Therefore, the application of a sentencing recommendation based upon advisory protocols and rules which fail to take into account the above mitigating factors is antithetical to the clearly stated sentencing protocols mandated by Congress.

[7]    A conclusion agreed upon by the Presentence Investigation Report.  See, PSR, ¶ 114, page 25. However, the PSR recommends a sentence at variance of 18 months and fails to articulate a methodical reasons why a non-custodial should not take into consideration the unique circumstances this particular 66 year old offender and her son, who shall endure the hardship that a custodial sentence shall render upon her post conviction efforts for continued rehabilitation and redemption in her senior years.

8

Lori Zeno is a very special human being.  A survivor, who, according to all who have met and interacted with her over the years, is far more than a mechanical chronology of the events of criminal conduct. There are events, however, that serve as historical bench markers to the pain that she endured during her formative childhood, teenaged years and adult years of her life that weigh heavily in favor of a non-custodial sentence in this case.  Lori Zeno is an individual who embodies the wise observation of Bryan Stevenson, the renowned death penalty attorney who has written that many individuals in our criminal justice system are "*far more dynamic that the worst thing that they have done.*"

## II.  Background/Guilty Plea

<u>Summary of The Relevant Procedural Background</u>

As the court is aware, on February 3, 2026, Lori Zeno appeared before United States Magistrate Judge Vera M. Scanlon, and pursuant to a plea agreement, entered a guilty plea to one count of the ten-count superseding indictment, that during a six month time period, from June 2024 and January 2025, Lori Zeno and Rashad Ruhani, with others, conspired to engage in a fraudulent scheme in which they misappropriated $535,406.30 in funds from the Queens Defenders, a non-profit organization that provided legal services and community support services to indigent residents of Queens in violation of 18 U.S.C. §1343 and in violation of 1 U.S.A. §1349.  See, PSR, ¶ 2, page 3.

<u>The Presentence Investigation Report</u>

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, the United States Probation Office conducted an interview of Lori Zeno and prepared a Presentence Investigation Report ("PSR"), which included, *inter alia*, a calculation of the applicable advisory Sentencing Guidelines.  The PSR Guidelines calculation and analysis adopted the guideline set forth in the plea agreement.  *See*, PSR, ¶ 36 through ¶ 46, pages 10-11.  As stated above, count one of the ten-count Superseding Indictment, which charges Wire Fraud Conspiracy in violation of 18 U.S.C. §1349.  The substantive offense in this matter is wire fraud in violation of 18 U.S.C. §1343, and Guideline §2B1.1 is applicable, with a base

offense level of 7.  See, §2B1.1(a)(1).  The criminal conduct in this six month time period resulted in a total loss of $535,406.30.  Since the loss amount is more than $250,000 but not more than $550,000, the offense level is increased by 12 levels pursuant to Guideline §2B1.1 (b)(1)(G).  Since the offense resulted in substantial financial hardship to the Queens Defenders, which ultimately lost its contract with New York City and had to lay off a significant number of its staff members.  Consequently, the offense level is increased by 2 levels under Guideline §2B1.1(b)(2)(A)(iii).[8]  In addition, since th offense involved the misrepresentation that Lori Zeno was acting on behalf of the Queens Defenders, a non-profit organization, the offense level is increased by 2 levels under Guideline §2B1.1(b)(9)(A).  Since Lori Zeno abused a position of private trust by using her position and authority at the Queens Defenders to facilitate and conceal the offense; the offense level is increased by 2 levels under Guidelines §3B1.3.[9]  Since Lori Zeno submitted fraudulent requests to the Queens Defenders in order to obtain reimbursements for rent at the Penthouse Apartment, which she claimed was to provide housing for a homeless minor while concealing from the Queens Defenders that Rahsad Ruhani used it to pursue his romantic dalliances; the offense level is increased by 2 levels under Guideline §3B1.4.[10]  Since there

---

[8]    This two level increase overstates and inappropriately enhances the recommendation for a period of custody even at variance with the Guidelines.  In addition, because the offense resulted in "substantial financial hardship," not only was the offense level increased by 2 levels under USSG §2B1.1(b)(2)(A)(iii), but Lori Zeno did not meet the criteria for a 2 level decrease as a zero point offender by operation of USSG §4C1.1(a)(6).  So here, there is actually a 4 level consequence (2 level increase / not receiving 2 level decrease) to Lori Zeno's Guidelines Offense Level, which is a subtle but important point.  While Queens Defender did technically lose its contract, no employee or staff member missed one day of employment or was there any lapse whatsoever in the legal representation, as the Brooklyn Defender assumed the financial responsibility under the contract with the City of New York and maintained all the attorneys and staff without a single day of lapse or loss in its critically important operations.  This is a factor not considered in the calculation in the Guidelines of 51 to 63 months imprisonment nor the recommended sentence at variance of 18 months by Probation.

[9]    Since neither Guidelines §3B1.3 nor a recommendation at variance accounts for the manner in which Rashad Ruhani, a sophisticated violent persistent offender, shrewdly manipulated the at risk state of mind of Lori Zeno, as exhibited by his ability to con her into an empty promise of pre-text unlawful marriage, and how he also depleted her personal finances (purchasing of a $96,000 BMW and the ravaging of her personal bank accounts.)  The government is aware that while Lori Zeno ██████████████████████████████████████, Rashad Ruhani raided her personal financial accounts - - he forged her signature to a check made out to him giving him $5,000.00 to cover his lifestyle of luxury clothing and expensive luxury vehicles, and to pursue his romantic interests.  As a result, this is an additional factor that Lori Zeno requests that the court consider, *inter alia*, in imposing a non-custodial sentence at variance with Guidelines.

[10]    The defense for Lori Zeno strongly urges this court to review the audio recording between Rashad Ruhani and a young female staff member at Queens Defender, wherein Rashad Ruhani is using his "pimp style" guile to extort sex in exchange for use of his position at Queens Defenders to get the young female staff member a raise and favorable "low show" job.  The young woman agrees and he directs the young woman to meet him directly at the

10

is no evidence to suggest that Lori Zeno held an aggravating or mitigating role in the instant offense, no role adjustment is applied in his case. See, PSR, ¶29, pages 8-9.

Reduction For Acceptance of Responsibility and Criminal History Category

Since Lori Zeno accepted responsibility in a timely manner, she was granted a full three level reduction pursuant to Guideline § 3E1.1(a) and (b). *See*, PSR, ¶ 43 and ¶ 44, page 11.

Criminal History Category

Lori Zeno has a criminal history score of zero points, therefore her criminal history is at category I. *See*, PSR, ¶ 49, page 12. Based upon a total offense level of 24 and a Criminal History Category of I, the advisory Guidelines range is 51 to 63 months. *See*, PSR, ¶ 98, page 23.

Objections To The Presentence Investigation Report

Lori Zeno has no material objection to the advisory Guidelines calculation in the P.S.R., nor does she have a material objection to those portions of the P.S.R. that set forth the offense conduct in Part A or the criminal history in Part B, and/or the offender characteristics in Part C, other than requesting that the court impose a sentence at variance with the Guidelines.

### III.  Lori Zeno's Sentencing Recommendation

As stated above, Lori Zeno requests that the court impose a non-custodial sentence at variance with the sentencing guidelines, with a recommendation of mandated continued mental health therapy and treatment pursuant the court's authority under 18 U.S.C. §3553(a) and 18 U.S.C. §3661.

Not only does the court have authority under 18 U.S.C. §3553(a), but under the unique factors that Lori Zeno presents to the court, that fairness to an otherwise outstanding woman, as reflected in both the clear and nuanced mitigation presented herein, provides grounds for the court to consider such a non-custodial sentence upon such a gifted, talented and long term servant of the poor - *Lori Zeno*.

---

Astoria Penthouse apartment. This is conduct that was hidden from Lori Zeno, however, Rashad Ruhani exacted his influence over Lori Zeno to facilitate the rental and high end furnishings of his Penthouse crib. Yet another factor for the court to consider, as this revelation, along with others, drove Lori Zeno ███████████████. It is a subtle but powerful factor to be considered in imposing a sentence at variance upon an emotionally damaged and abused woman who otherwise gave so much of her life - - nearly four decades - - to dedicated service and commitment resulting in the magnificent championing of the rights of the indigent in our state court system.

11

The court should be aware, that over the long tenure of my career at the federal criminal defense Bar, that it is extremely rare that I have recommend that the court even consider a non-custodial sentence for a violation of our federal criminal laws. Given my professional awareness of the great toll that is rendered upon those at the criminal defense Bar (especially those who serve as public defenders), who dedicate so much of their lives to representation of the indigent, often in complex and demanding ways that are never presented in court proceedings or come to the attention of our judges in both the state and federal courts, defense counsel has given great thought to a recommendation of a sentence that would be *sufficient but not greater than necessary* to punish Lori Zeno, now age 66, and how to do so consistent with the overall sentencing objectives of Congress, and, at the same time, giving an extremely fragile woman hope for a uniquely difficult and challenging journey ahead.

Meeting Lori Zeno and Moving Forward with Her Case

The court should be aware that defense counsel was approached by members of the public defense Bar to represent Lori Zeno. It was well known in the public defense Bar that Lori Zeno, a long time champion of the rights of the poor had been suspended from Queens Defenders, an organization that she co-founded and had served as its executive director. Members of the public defense Bar were also horrified, when it had become disclosed in the media, that Lori Zeno, unable to cope with her criminal conduct - - the misappropriation of public funds - - had ███████████████████████ ████████████████████████████. I agreed to the representation and contacted the government prosecutors assigned to this case, who were extremely thoughtful and conscious of Lori Zeno's situation, and agreed to permit a voluntary surrender of Lori Zeno from psychiatric care facility directly to the United States Courthouse for arraignment on a designated time and place.

On the morning of June 18, 2025, counsel, along with Lenny Wardk a retired member of law enforcement, drove out to the Brunswick Hospital Center, an acute care psychiatric facility in Amityville,

12

New York, to escort Lori Zeno to the federal courthouse for arraignment.  Counsel was immediately struck by Lori Zeno's fragile emotional, but optimistic, state of mind and her overall appearance.  On the drive to the courthouse, there was silence for a long part of the trip.  Lori Zeno broke that silence by apologizing for letting down so many, including the poor people that she represented in Southeast Queens for decades and said:

"*Why did he have to destroy everything that I worked so hard for in my life, why didn't he just take my money instead of destroying me.  What am I going to do now?*"

These were the thoughts, these were the words that began my representation of the  66 year old woman, a former champion of the criminal defense Bar on behalf of the poor, who is now before the court to be sentenced for her criminal behavior in relation to betraying the trust that our courts, our community and her clients once had in Lori Zeno.

As stated above, the Presentence Investigation Report in this case is perhaps the most thorough that I have seen in my years of federal criminal defense representation.  The Presentence Investigation Report contains an impressive review of decades of excruciating painful to read mental health records dating back to the early 2000s, and the alarming mental health records the memorialize the past suicide attempts.  The Presentence Investigation Report is thorough so there is no need to repeat what has been carefully reviewed and analyzed and presented to the court by Probation.  The Presentence Investigation Report recommends a sentence at variance of 18 months.  The Presentence Investigation Report recommends incarceration albeit below the Guidelines recommendation of 51 to 63 months and states as its reasons:



Sentencing Recommendation, ECF Doc. No. 83-1 (Sealed) 5/20/26 at page 3 of 9.

This is the only place within a remarkable Presentence Investigation Report that I have a disagreement. Of course, I respect the proposition advanced, and the above carefully selected words do, in other cases, provide a basis to impose a custodial sentence. However, even given the words selected, in the wisdom gained from my professional journey, which has included the representation of defendants on death row, I have a different point of view in relation to imposing a custodial sentence in this case upon Lori Zeno.

First, it's a reasonable perspective that Lori Zeno's conduct is more subject to and in need of explanation than it is that her conduct is a "████" act that needs to be punished with a custodial sentence. Instead, it is not unreasonable to view how the emotional manipulation of the vulnerabilities of a middle aged woman who suffered from a lifetime of physical abuse, ████████, emotional neglect and abuse, and alcoholism, with documented ███████████████████████████████, were the significant motivating factors in Lori Zeno's criminal conduct. Certainly a period of 18 months incarceration is not necessary to impress upon the mind of an attorney with nearly 40 years of representing criminal defendants, the ████████████████, that a lesser sentence, an intermittent non-custodial sentence, would not equally, if not more so, communicate. Nor is a period of 18 months incarceration upon a 66 year offender who is the former leader of the Queens Defenders necessary █ ██████████████████████████████████████████████████████████████████.

Lori Zeno has been more than just fired, she has been discharged from one of the highest profile defender jobs in state of New York. Lori Zeno has been humiliated as more information has been disclosed publicly about how her position of authority was compromised, and about her willing participation and misconduct. As this case has received significant publicity, and Lori Zeno has been publically identified, shunned and banished from not only her participation in our beloved profession, but from her leadership role in building bridges for the empowerment of the poor in Southeast Queens. In fact, as those in the community and in the legal profession become aware of the circumstances related

14

to the diversion of funds, the sham marriage, ▮▮▮▮▮▮▮▮▮▮, and the manner in which Rashad Ruhani also ravaged Lori Zeno's personal finances, a serious question is raised as to the necessity of a custodial sentence *at all* for this 66 year old offender with no criminal history.

Finally, Lori Zeno has and shall continue to be severely punished with *significant penalties*. Lori Zeno has been stripped of her precious professional license to practice law - something that she exclusively did, and performed admirably, throughout her entire adult life. Lori Zeno has been terminated from employment as an executive from a position that earned her an average income of approximately $400,000 per year. At age 66, and without a lawyers license, it is unlikely that Lori Zeno will ever find similarly compensated employment over the remainder of her productive work years. Without that significant income, Lori Zeno shall be forced to sell her family home that she worked her entire life to maintain, as she is rendered incapable of paying the mortgage and taxes on the property. It is a significant punishment to have to vacate the family home, the place of decades of precious memories - a *significant penalty*.

As Lori Zeno approaches her 70s, she will be faced with a staggering restitution payment that, after the sale of her home, shall deplete all her life savings and resources - again *a significant penalty*. So, as a defense counsel of many years, and also at the doorstep of my 70th birthday, I have confidence that a non-custodial sentence, with appropriate mandatory sustained mental health treatment and therapy, is sufficient but not greater than necessary to reach the sentencing goals of Congress, the Sentencing Guidelines, and our community, in order to severely punish Lori Zeno for her criminal conduct in this case, to protect the public and send powerful messages to the community and Bar of the great risk involved in her level of criminal conduct.

The Life Journey Ahead - The Continued Hope for Redemption

In my sentencing submissions, I often honor an experience that I had at sentencing many years ago as a young lawyer at the very dawn of my career as a defense attorney. Over 40 years ago, I

appeared before the Hon. Leroy Kellum, a long retired and long deceased New York state court judge, who observed in his consideration of a sentence to impose upon an offender that the *"first step towards rehabilitation is recognizing that you have made a mistake and taking steps to correct that mistake."*

This court will discover from a review of the record in this case, as confirmed by the government, that upon her arrest and arraignment, Lori Zeno sought and, in fact, began the negotiations towards an early disposition of her case.[11]

From a review of the Presentence Investigation Report, it is clear that Lori Zeno, is a person who, as described by noted capital defense Bryan Stevenson, is *"far greater than the worst thing(s) that [s]he has ever done."* As the court can read from the Presentence Investigation Report, and from the letters of support, Lori Zeno has endured the trials and tribulations of life. Lori Zeno has maintained meaningful relationships with her children and other professionals, (most of whom were unaware of the personal traumas that she endured), notwithstanding her failure to overcome long term lingering mental health issues related to her exposure to traumatic physical, █████ and emotional abuses. Lori Zeno maintained positive relationships with many within the legal profession and effectively served in a leadership position in the Southeast Queens community, providing much needed services to impoverished members of that community. See Exhibit A (*Letters of Support*).

There are two powerful words that come to mind when reflecting on a sentence to be imposed upon Lori Zeno in relation to her criminal conduct in this case. Those words are pain and hope. Our goal has been to give this court an indication of the powerful emotional pain that Lori Zeno has endured throughout her life, and to communicate how important it is for this court to exercise its great discretion and provide a sentence that inspires rather than further strips Lori Zeno of the preciousness of hope.

---

[11]     In fact, during the pendency of this case, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ which is a positive step towards her redemption.

Lori Zeno is, in fact, an emotionally broken woman; a woman who has clung to her Pretrial Services Officer as a life preserver while she has been engulfed in a tsunami of hopelessness and despair over her involvement in the crimes to which she has accepted responsibility and pled guilty.

From the filter of the outside looking in, Lori Zeno was a trusted Executive Director of a critically important defense agency providing much needed legal services to indigent defendants who were charged with serious criminal cases in Queens County. From that filter, one easily observes that Lori Zeno violated that trust, wherein pubic funds were used to provide questionable "low-show" employment for some, and outright "no-show" employment for others. See, PSR, ¶ 11, page 4. That public funds were used to purchase expensive exotic vacations, luxury furniture, and expensive designer clothing, *inter alia.* See, PSR, ¶ 12, page 4. From the perspective of the inside looking out, another reality emerges. Both real, both coming together to help explain how such a brilliant, talented, determined and courageous woman fell from the grace of the legal profession to standing before this court for sentencing for abusing the trust that so many had in her.[12] The information derived from both perspectives helps inform the wisdom needed to arrive at the right sentence to impose in this case.

In honor of the June 2021 passing of Judge Jack B. Weinstein just weeks before his 100th birthday, the defense would like to end its sentencing recommendation with a quote from one of his most insightful and often cited sentencing opinions:

> Pragmatism and a sense of fairness suggest reconsideration of our over reliance on incarceration. Though defendants are hemmed in by circumstances, the law must believe that free will offers an escape. Otherwise, its vaunted belief in redemption and deterrence—both specific and general— is a euphemism for cruelty. These defendants are not merely criminals, but human beings and fellow American citizens, deserving of an opportunity for rehabilitation. Even now, they are capable of useful lives, lived lawfully.

---

[12] We would ask the court to keep in mind that prior to Rashad Ruhani's influence in her life, Lori Zeno earned a salary as the Executive Director of Queens Defenders, and that she lived with her family in a beautiful home in Garden City, Long Island; that she never took an exotic vacation in 40 years of service, nor did she ever purchase designer clothing at luxury clothing stores. See, PSR, ¶¶ 11-12, page 4.

17

*United States v. Bannister*, 786 F.Supp.2d 617, 690 (EDNY 2011). In consideration of the sentencing submission in this case, defense counsel has given a great deal of pause and reflection about the life journey of the frail woman that was met at ████████████████████████████████ on the morning of June 18, 2025, and deep level of shame, embarrassment, and disappointment in herself, and the look of fear in her eyes on that morning.

There is no question that Lori Zeno has thus far been severely punished for her transgressions and shall be for many years to come, as she approaches her twilight chapters of her life. To her credit, Lori Zeno has taken full responsibility for her criminal conduct and the manner in which she betrayed the trust that our courts, and above all, the community had in her as the Executive Director of such an important organization as Queens Defenders. The lessons from her failure, and her reasons and motivations for her criminal conduct will resonate within the legal community, and the impoverished community in Southeast Queens for years to come.

It is my hope that Lori Zeno will emerge from the self imposed hell in which she, at times, emotionally resides; and that she continue to examine her life to find the strength to continue life as a needed mom, and now grandmother; that she can, out of the pain of yet another traumatic experience in a lifetime marred with such similar traumatic episodes at the hands of abusive men, find her will and a pathway to redemption.

## IV.  Conclusion

Lori Zeno has take responsibility for her criminal conduct that destroyed a lifetime of hard work, commitment achievement and service to our courts and the Southeast Queens community. For all of the reasons set forth above, Lori Zeno requests that the court impose a non-custodial sentence at variance with the guidelines. For a person who has given so much of her life to serving others with compassion, commitment and courage, Lori Zeno is in need of the same. It is our hope that the court shall impose a sentence that does not strip Lori Zeno of the preciousness of hope.

Dated:  New York, New York
        July 17, 2026

Respectfully submitted,

*Anthony L. Ricco*

Anthony L. Ricco, Esq.

19